JOAN MASEL, PLAINTIFF-RESPONDENT, v. PARAMUS
BOROUGH COUNCIL, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued June 10, 1981—Decided July 22, 1981.

---

Before Judges MATTHEWS, MORTON I. GREENBERG and COLEMAN.

*Walter J. Dorgan, Jr.*, argued the cause for appellant (*Dorgan & Murray*, attorneys).

*Jonathan N. Harris* argued the cause for respondent (*Andora, Palmisano, DeCotiis & Harris*, attorneys).

The opinion of the court was delivered by

MATTHEWS, P. J. A. D.

The issue confronting us on this appeal is whether *L.*1980, *c.* 147, effective November 22, 1980, increased the term of the incumbent Paramus Borough Clerk from one year to three years.

The facts are not in dispute. Prior to November 22, 1980 *N.J.S.A.* 40A:9–133 provided that the term of office of a municipal clerk was three years, "[u]nless otherwise provided by law." Similarly, prior to that date, *N.J.S.A.* 40:87–15 provided that the term of office for appointive officers under the borough form of government was "for 1 year and until their successors shall have qualified." Since Paramus is governed under the borough form of government, the applicable section for appointment of the borough's appointive officers (including the borough clerk) is *N.J.S.A.* 40:87–15.

Plaintiff was first appointed borough clerk in January 1977. She was also appointed to that office at the borough's annual reorganization meetings in 1978, 1979 and 1980. Her most recent appointment was made on January 1, 1980.

On November 22, 1980, *L.*1980, *c.* 147, was enacted. Under § 5 the phrase "[u]nless otherwise provided by law" was deleted from *N.J.S.A.* 40A:9–133, and the statute now provides:

> In every municipality there shall be a municipal clerk. When so provided by law the municipal clerk shall be elected, otherwise he shall be appointed by the governing body of the municipality. His term of office shall be 3 years. If elected, his term shall commence on January 1 following his election and when appointed, his term shall run from January 1 in the year in which he was appointed.

Under § 1 *N.J.S.A.* 40:87–15 was amended to provide that the term of office of borough appointive officers was "for 1 year, or for such specific term as is generally provided by law, and until their successors shall have qualified." Section 6 provides:

> Nothing contained in this act shall be deemed to affect the term of office of any municipal clerk serving on the effective date of this act a specified term of more than 3 years during such term.

Section 9 provides that the act "shall take effect immediately"— *i. e.*, November 22, 1980.

On January 1, 1981, when the borough held its annual reorganization meeting, the mayor did not nominate anyone for appointment to the office of borough clerk. Under *N.J.S.A.* 40:87–16, if the mayor "fails" to make a nomination for an appointive office "within thirty days after the office becomes vacant," the borough council "shall appoint" the officer.

On February 5, 1981 plaintiff filed a verified complaint for declaratory judgment against defendant borough council in the Law Division, Bergen County. She requested the court to construe the application of *N.J.S.A.* 40:87–15 and *N.J.S.A.* 40A:9–133 to her term of office and demanded judgment (a) declaring that defendant has "no statutory or other power or authority to terminate plaintiff's employment as Paramus Borough Clerk," (b) restraining defendant "from altering" her employment as borough clerk and (c) awarding her attorney's fees and costs of suit.

Following the hearing on the return date of the order to show cause, the trial judge, in a written opinion, held that plaintiff "holds a three year term of office as the Paramus Borough Clerk terminating on January 1, 1983."

Defendant contends that the trial judge erred in holding that *L.*1980, *c.* 147 (the "act") should be retroactivity applied to plaintiff's term of office because no expression of legislative intent to make the act retroactive can be found in the act.

In his opinion the judge noted that in 1971, "continuing the trend toward uniformity," the Legislature adopted *N.J.S.A.* 40A:9–133, which "established a three year term for municipal clerks in all municipalities [unless otherwise provided by law]." This meant that the "only exceptions" to the three-year term specified by *N.J.S.A.* 40A:9–133 were "clerks serving under forms of government where different terms had been specifically set by prior legislation." Plaintiff was one of these exceptions, serving as she did from January 1, 1980 as borough clerk "for 1 year and until . . . [her successor] shall have qualified" pursuant to *N.J.S.A.* 40:87–15. He also found that the act adopted on November 22, 1980 removed the "few exceptions to the new legislative mandate that all municipal clerks serve three years."

In addressing plaintiff's contention that the act increased her term of office to three years, the judge noted that the Legislature "has the power to extend the terms of [incumbent] municipal officers." However, he acknowledged that this "subject" was "not directly addressed" by the Legislature in the act and, therefore, he had to "apply the rules of judicial construction to ferret out the legislative purpose." He concluded that this "procedure" revealed "an intention to extend the term of incumbent clerks [such as plaintiff] for . . . three reasons."

First, he found that the act "is remedial in nature and represents an effort to complete an ongoing task as quickly as possible." He noted that, under the act, the words "unless otherwise provided by law" were "stricken" from *N.J.S.A.* 40A:9–133, "the measure applicable to every municipality." Thereby the term "of every municipal clerk is set at three years." He also noted that the drafters of the act had "pains-

takingly collected all five statutes,[1] which gave municipal clerks different terms from the vast body of municipal law" and had added to each of them "the phrase 'unless a specific term is generally provided by law.'" He found that this was done "because other municipal offices had been included [in the five statutes] and the object [of the act] was to change the term of only municipal clerks." He, therefore, concluded that "[r]etroactivity must be inferred" because the act "clearly was the remedy for an existing evil, [*i. e.,*] lack of uniformity in the term of office for all municipal clerks."[2]

Second, the judge noted that "two classes of incumbent clerks [were] involved": those with "terms of more than three years" and those with "terms of less than three years." He also noted that the "act [in section 6] specifically exempts municipal clerks serving a term of more than three years," but that the act

---

[1] *N.J.S.A.* 40:87–15, *N.J.S.A.* 40:125–3, *N.J.S.A.* 40:132–3, *N.J.S.A.* 40:158–4 and *N.J.S.A.* 40:81–11.

[2] The act was introduced as Senate Bill 220 in the first annual session of the 199th Legislature, which convened on January 8, 1980. The sponsor's statement to the bill reads as follows:

This bill would provide for a uniform 3-year term of office for all municipal clerks. The bill amends various sections of the law concerning the government of towns, boroughs and villages to remove therefrom specified terms of office for clerks, and brings those statutes in accord with N.J.S. 40A:9–133. The section repealed [by section 8 of the act], R.S. 40:125–10, provides for a different term of office for clerks in towns of over 25,000 persons, than for clerks in towns of less than 25,000 persons. The purpose of this bill being uniformity, R.S. 40:125–10 requires repeal.

After referral to the Senate County and Municipal Government Committee, the bill was reported out with amendments, and a second paragraph was added to the sponsor's statement:

The Senate committee amendments, proposed by the Department of Community Affairs, would provide that the bill shall not affect the term of any municipal clerk currently serving a term of more than 3 years, during such term. It appears that in some towns of under 25,000 the council has, by ordinance, established a longer term than 3 years (see R.S. 40:125–3 and 40:132–3, sections 2 and 3 of the bill, for authorization to do so).

"remains silent as to clerks serving a term of less than three years." He, therefore, held that the maxim *expressio unius est exclusio alterius* applied and that the "omission" of a specific exemption for clerks serving terms of less than three years "must be considered an inclusion" of such clerks within the act's applicability.

Finally, he noted that the act provided that it shall take effect immediately (*i. e.*, November 22, 1980) and that "the term of all clerks commenced" on January 1, 1981. He, therefore, concluded that, if the Legislature had intended that the act have no effect on "the incumbent clerks," it "could have made the effective date January 1st."

Defendant's argument for reversal relies heavily on *Bird v. Johnson,* 59 *N.J.L.* 59 (Sup.Ct.1896), which "creates a presumption against retroactively extending a present term of office." There, one Johnson was elected in December 1892 to the office of collector for a one-year term (January 1893 to January 1894). In March 1893 the Legislature enacted a statute [3] providing that the term of office for Johnson's position "shall be three years." In December 1893 Johnson was again elected to the office of collector. One of the questions before the court was whether the act of March 1893 "was purely prospective" (in which case Johnson would have been elected in December 1893 to a three-year term—January 1894 to January 1897) or whether the act "operated to enlarge the term of the incumbent [*i. e.*, Johnson] from one year to three" (in which case the December 1893 election would have been invalid because Johnson's term, which

---

[3]The act referred to in *Bird* is *L.* 1893, *c.* 94, adopted on March 10, 1893:

    1. BE IT ENACTED *by the Senate and General Assembly of the State of New Jersey,* That the term of office of the city collector or other officer charged with the collection of taxes and assessments in any city of the third class shall be three years.

    2. *And be it enacted,* That all acts and parts of acts, either general or special, inconsistent with the provisions of this act be and the same hereby repealed.

    3. *And be it enacted,* That this act shall take effect immediately.

began on January 1893, would not have expired until January 1896). The court concluded that

> ... the legislative purpose expressed in the act of 1893, did not enlarge or in any wise affect the term of an officer elected previous to its passage. The legislature was dealing with an elective office by simply altering its duration. In the absence of anything to the contrary, the presumption is that it was a rule of conduct for the election of such officers for the term so indicated. In fine, that it was a purely prospective provision regulative of the terms of said office for the future. If, in addition, its object had been to bestow upon an existing placeman a term of office in excess of that to which he had been elected, some indication of such a purpose would appear in its context. The power of the legislature, by bare fiat, to fill a municipal office for a term to which the incumbent was not elected, may be granted without casting a shadow of doubt upon the proposition that such a purpose, to be operative, must be discoverable in the language of the lawmaker. Unless this be so, the legislature, whenever it changes the term of any office, either ousts an incumbent chosen for a longer term or retains one for a term to which he was not elected. I do not find that such a rule has been anywhere applied to officers chosen under a system of popular election. On the contrary, the established doctrine is that an incumbent may be legislated out of a term to which he was elected or into a term to which he was not elected, only when the purpose so to do is found in the language of the statute. [at 60–61]

Defendant contends that the trial judge ignored the "presumption against retroactively extending a present term of office" created in *Bird* and then applied "three selected principles of judicial construction to infer retroactivity."

Turning to the first of the trial judge's three reasons for "inferring retroactivity," defendant maintains that to "suggest" that retroactivity was "intended" because the act is remedial in nature "makes no sense" and asserts that there is "no court decision or ... rule of statutory construction that states [that] retroactivity should be inferred because the legislation is remedial in nature."

Defendant also contends that the trial judge's second reason, *i. e.,* applying the maxim *expressio unius est exclusio alterius,* is "contrary to the holding of *Bird.*" In short, defendant maintains that the act cannot be considered to satisfy "the requirement of *Bird*" because "there is absolutely no discoverable language" in the act "to show" a "purpose" to extend the term of an incumbent holder.

The trial judge noted that (1) only "two classes of incumbent clerks" were "involved" under the act, (2) the act "specifically" exempted from the effects of the act any municipal clerk "serving" a specified term of more than three years on the effective date of the act and (3) the act was "silent" as to any clerk "serving" a term of less than three years on the act's effective date. He, therefore, applied the *expressio unius* maxim and found that the "expression" in the act of an exemption from the act's effects for one class of incumbent clerks (those serving specified terms longer than three years) meant the "omission" from this exemption of the other class of clerks (those serving terms shorter than three years), which, in turn, "indicated" the "inclusion" of the latter class of clerks within the act's effects (*i. e.*, their original terms of office were extended to three years effective as of November 22, 1980).

■ We do not regard chapter 147 as remedial legislation. While the act does bring about uniformity in the terms of municipal clerks, we can find nothing in the record that even suggests that the prior lack of uniformity in terms was a "evil," to use the word of the trial judge, which required remedy. The characteristics of a remedial statute has been described in *Sutherland* as:

> Every statute that makes any change in the existing body of law, which excludes only occasional enactments which undertake merely to restate or codify prior law, can be said to have as its purpose to "remedy" some flaw in the prior law or some social evil. The mere fact that a statute is characterized as "remedial," therefore, is of little value in statutory construction unless the term "remedial" has for this purpose a more discriminate meaning. For, if all laws are "remedial" the rule amounts to nothing more than a statement that all legislation is to be liberally construed. The trend today appears to favor a liberal construction of all legislation with the view to effectuating legislative purpose. Traditionally, however, the courts have been more discriminating, and in selecting a liberal or strict construction the emphasis has usually been placed upon the persons, things or interests affected by a statute. [3 *Sutherland, Statutory Construction*, (4 ed. Sands 1974), § 60.02 at 31]

We do not believe chapter 147 should be regarded as remedial so as to require retroactive application.

██ We also do not believe that the trial judge was justified in employing the maxim *expressio unius est exclusio alterius* to arrive at a retroactive construction of the statute. The mere fact of a reference excluding clerks who were currently serving more than three year terms on its effective date does not, in our judgment, considering the history of the legislation, justify the employment of the maxim. The legislative history discloses that the exception was not in the bill as originally introduced. It came into the law by amendment made by the Senate County and Municipal Government Committee, at the request of the Department of Community Affairs, out of an abundance of caution lest the term of a municipal clerk serving a term of more than three years be shortened. That concern does not, in our opinion, justify employment of the maxim.

██ Courts employ the legal maxim *expressio unius est exclusio alterius* with great caution. The maxim, which means that the express mention of one thing implies the exclusion of another, is purely interpretive in aid of determining *intention* and is not a rule of law. It has been described as serving to describe a result rather than to assist in reaching it. *Gangemi v. Berry*, 25 *N.J.* 1, 11 (1957); *Reilly v. Ozzard*, 33 *N.J.* 529, 539 (1960); *Esso Standard Oil Co. v. Holderman*, 75 *N.J.Super.* 455, 470 (App.Div.1962), aff'd o. b. 39 *N.J.* 355 (1963), and *Resnick v. East Brunswick Tp. Bd. of Ed.*, 77 *N.J.* 88, 99 (1978).

██ As a mere aid to construction, and not a rule of law, the maxim must, in our judgment, fall before the presumption that legislation, unless otherwise clearly expressed, acts prospectively. Retrospective operation of legislation is not favored in the law, and the law will not be construed as retroactive unless the act clearly by express language or necessary implication indicates that the Legislature intended retroactive application. In the words of Professor Sutherland:

It is a fundamental principle of jurisprudence that retroactive application of new laws involves a high risk of being unfair. There is general consensus among all people that notice or warning of the rules that are to be applied to determine their affairs should be given in advance of the actions whose effects

are to be judged by them. The hackneyed maxim that everyone is held to know the law, itself a principle of dubious wisdom, nevertheless presupposes that the law is at least susceptible of being known. But this is not possible as to law which has not yet been made. [2 *Sutherland, op. cit.*, § 41.02 at 247]

In *Spencer v. Middlesex Tax Bd.*, 95 *N.J.L.* 5 (Sup.Ct.1920), one Spencer was appointed the secretary of the Middlesex County Board of Taxation on May 5, 1919 for a fixed term ending on May 1, 1920. On May 3, 1920 the board appointed another as its secretary for a term of one year, but Spencer refused to give up his office. He claimed that he had the right to continue to hold the office under *L.*1920, *c.* 348, which took effect on April 30, 1920 (the day before his term expired).

In pertinent part, that act provided that the secretary of any county board of taxation

... shall hold office during good behavior, efficiency and residence in the county where employed, and no such person shall be removed from any such office for political reasons or for any other cause than incapacity, misconduct, nonresidence or disobedience of just rules or regulations established or which may be established by any such county board of taxation.

Spencer argued that the purpose of the Legislature in adopting the act was to retain in office indefinitely secretaries of county boards then holding office, as well as those thereafter to be appointed, notwithstanding that each of the incumbents originally held office for a fixed term which expired the day after the enactment went into effect. His successor argued that the legislative purpose exhibited by the statute was only to provide an indeterminate term for secretaries who should thereafter be appointed and not to extend indefinitely the terms of office of then present incumbents.

Both parties agreed that the act was "susceptible of being construed either in the one way or the other, without doing violence to the language used." 95 *N.J.L.* at 9. The court found this to be "true," but also noted that it was "equally true that to give ... [the act] the construction urged on behalf of the prosecutor [*i. e.*, Spencer] would make it retroactive in its effect, while that claimed on behalf of the respondent would make it purely prospective." *Ibid.* Therefore, the court determined

that, "in this situation," the rule of statutory construction laid down in *Citizens' Gas Light Co. v. Alden*, 44 *N.J.L.* 648 (E. & A. 1882), applied:

> ... [I]t is not enough that words used in an act *may* be given a retrospect without doing violence to their meaning or that such a course may coincide with their common understanding.
>
> Laws, generally, are enacted for the regulation of future affairs and conduct, and to establish the basis on which rights may thereafter under them be rested, and are not usually designed to alter or affect the quality or legal relations of past acts and concluded transactions, much less to disturb rights which have arisen under laws running concurrently with their birth. Hence we do not look for or expect in any enactment that it shall be operative as of time prior to its own existence; and before we are permitted to ascribe to it such purpose, there must be found in the law such clear and indubitable expression of the legislative design as precludes any other reasonable interpretation of the words used. The rule in the courts is, that retroactive effect will not be given to a statute when the words in it can be construed as designed to make it prospective only. *Williamson v. N. J. S. R. R. Co.*, 2 *Stew.Eq.* 311. All legislation is framed, or presumed so to be, in view of this conspicuous canon of construction governing in courts where the duty of interpretation is reposed. And when the legislature intend to give to law of their enactment operation upon the past, they will and must do it with such choice of words as places it beyond the realm of doubt. [at 653–654]

Accordingly, the *Spencer* court construed the statute before it prospectively. We believe the principles enunciated in *Spencer* should be followed here.

The trial judge's third reason (inferring retroactivity from the statement in the act that it is to take effect "immediately"), seems to be based on an incorrect premise. Contrary to his holding, the commencement date of "the term of all clerks" was not necessarily "less than six weeks" after the adoption of the act (*i. e.*, on January 1, 1981). Only the terms of *all* municipal clerks *with one-year terms* (such as borough clerks) would commence on January 1, 1981. For example, if the clerk of a town governed under *N.J.S.A.* 40:125–3 was appointed to a fixed two-year term starting on January 1, 1980, his term would not "commence" on January 1, 1981 since it would not expire until January 1, 1983. Therefore, if the Legislature had made the act effective on January 1, 1981, this would *not* indicate the Legislature's "intent" not to "affect" incumbent clerks since in

such case the act would "affect" such incumbent, two-year term clerks.

There is another factor that should be noted, and which we believe was not considered by the Legislature in enacting Chapter 147. Plaintiff here was first appointed borough clerk in January 1977 and has served continuously since then. If chapter 147 is applied to her, and her present term of office (which began on January 1, 1980) is extended to three years, she would achieve tenure under *N.J.S.A.* 40A:9–134, which provides:

> Any person holding the office of municipal clerk in any municipality and having held such office continuously for 5 years from the date of his original appointment or election shall have tenure in such office and shall not be removed therefrom except for good cause shown after a fair and impartial hearing.

While chapter 147 cannot be regarded as a "tenure statute," nor an act directly affecting a tenure statute, its effect would be similar. We do not believe that the granting of tenure should be brought about by inadvertence where there is nothing demonstrated in the words of the act to indicate that the Legislature meant to achieve such a result.

Finally, we have been informed that on January 22, 1981 Assembly Bill 3019 was introduced before the Legislature. It was passed by the Assembly on February 23 and was later amended by the Senate Committee on County and Municipal Government. Under the bill § 9 of chapter 147 is amended to read:

> This Act shall take effect immediately *but shall not extend the terms of persons holding office as municipal clerk on the effective date of P.L.1980, c. 147.* [Emphasis supplied]

As of the date of the writing of this opinion, Assembly Bill 3019 is before the Senate on second reading. We have not taken the existence of this Assembly Bill into consideration in reaching our result. In any event, while it has been said that an "amendment to an act may be resorted to for discovery of legislative intent in the enactment amended," it has also been said that "prospective legislative action . . . , while instructive, cannot impart substance to the current law." *Matawan v. Monmouth Cty. Tax Bd.*, 51 *N.J.* 291, 299 (1968); *Wood v. Wood,*

160 *N.J.Super.* 597, 601–602 (App.Div.1978); *Kendall Pk. Chap. of Deborah v. New Brunswick,* 159 *N.J.Super.* 249, 256 (App.Div. 1978), certif. den. 78 *N.J.* 396 (1978); *Columbia Broadcast Syst. v. Melody Recordings,* 134 *N.J.Super.* 368, 382 (App.Div.1975).

It has also been observed that the "effect of amendatory bills or statutes upon the determination of legislative intent in the passage of an original enactment is uncertain at best." *East Orange v. Livingston Tp.,* 102 *N.J.Super.* 512, 535–536, n. 2 (Law Div.1968), aff'd o. b. 54 *N.J.* 96 (1969). As the Supreme Court held in *Edwards v. Moonachie,* 3 *N.J.* 17 (1949):

. . [W]hile entitled to due consideration, the subsequent legislative construction of a statute [by way of a later amendment thereto] is not conclusive of the significance of the prior act. The Legislature cannot authoritatively declare what a law is or has been, for that is essentially a judicial function. [at 24]

The judgment of the Law Division construing chapter 147 of the *Laws of* 1980 as acting retroactively is reversed. No costs to either party.